**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SASHA ESTEP,
on behalf of minor child, C.W.,                    Case No. 1:16-cv-00925

      Plaintiff                                          Barrett, J.
                                                   Bowman, M.J.

          v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Sasha Estep filed this Social Security appeal in order to challenge the Defendant's finding that her minor child (hereinafter "CW ") is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. The Commissioner filed a response, to which Plaintiff filed no reply. As explained below, the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I. Background

In November of 2012, Plaintiff filed an application for Supplemental Security Income (SSI) on CW's behalf, alleging a disability due to attention deficit hyperactivity disorder ("ADHD"), anxiety disorder and expressive/receptive language disorder since December 1, 2005. (Tr. 11, 174-179). After the application was denied initially and upon reconsideration, Plaintiff requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). An evidentiary hearing was held on December 11, 2014, wherein Plaintiff and C.W. appeared and testified. (Tr. 32-94). On May 22, 2015, ALJ Deanna Sokolski denied Plaintiff's SSI application in a written decision. (Tr. 11-27).

The ALJ agreed that CW has severe impairments of attention deficit-hyperactivity disorder ("ADHD"), anxiety disorder, mixed receptive-expressive language disorder and encopresis. (Tr. 14). Considering those impairments, the ALJ found that CW functionally experiences a "marked" limitation in only one relevant area or "domain" of his life – interacting and relating with others. The ALJ determined that although CW has other limitations, those limitations are "less than marked." (Tr. 21-27). Because CW has only one area of "marked" limitation, the ALJ determined that CW was not under disability, as defined in the Social Security Regulations, and was not entitled to SSI. (Tr. 27).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination.

On appeal to this Court, Plaintiff first argues that the ALJ erred by failing to find at Step 3 that Plaintiff did not meet Listing 112.06. Plaintiff further argues that the ALJ's decision erred in finding Plaintiff did not functionally equal the severity of one of the listed impairments. Upon careful review, the undersigned finds that Plaintiff's asserted assignments of error are not well-taken.

**II. Analysis**

**A. Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). An individual under the age of eighteen will be considered to be under a disability if the child has a medically determinable impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last, for a continuous period of not less than 12 months. *See* 42 U.S.C.

§1382c(a)(3)(C)(i). The implementing regulations define the standard of "marked and severe functional limitations" in terms of "listing-level severity." *See* 20 C.F.R. §§416.902, 416.906, 416.924a, 416.926.

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income by a person under the age of 18, the Social Security Agency is guided by a three-step sequential benefits analysis. In this case, the first two steps of that analysis are uncontested. At Step 1, the Commissioner asks if the claimant is performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe." CW has not engaged in substantial gainful activity since November 2012, and

has severe impairments of ADHD, anxiety disorder, mixed receptive-expressive language disorder, and encopresis. (Tr. 14).

At Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments. *See* 20 C.F.R. §416.924a. The ALJ concluded that none of CW's impairments, alone or in combination, met or medically equaled a Listed Impairment that would entitle CW to a presumption of disability. The focus of Plaintiff's appeal to this Court is whether CW's anxiety disorder meets or medically equals Listing 112.06. (*See* Pl.'s Br. At 8-12).

To determine functional equivalence, the Commissioner is required to assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §416.926a(b)(1). To prove functional equivalence to a Listing, Plaintiff must show that CW's impairments resulted in "marked" limitations in at least two of the six domains, or that his impairments were "extreme" in at least one of the domains. 20 C.F.R. §416.926a(d). As stated, the ALJ determined that Plaintiff's limitations were "marked" in just one area – the domain of interacting and relating with others. Both at the administrative level and before this Court, "Plaintiff has the ultimate burden of establishing the existence of a disability." *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1233 (6th Cir. 1993).

### B.  The ALJ's decision is supported by Substantial Evidence

As detailed above, Plaintiff disputes the ALJ's finding of that Plaintiff did not meet Listing 112.06. Plaintiff first contends that ALJ's finding that there was insufficient evidence to establish the requirements of the listing. Second, Plaintiff contends that the

ALJ's decision erred in finding a less than marked limitation in the domains of "acquiring and using information" and "attending and completing tasks." (Doc 11, p. 12).

*1. Listing 112.06*

Listing 112.06 concerns anxiety disorders, where anxiety is either the predominant disturbance or is experienced if the individual attempts to master symptoms, e.g., confronting the dreaded object or situation in a phobic disorder, attempting to go to school in a separation anxiety disorder, resisting the obsessions or compulsions in an obsessive compulsive disorder, or confronting strangers or peers in avoidant disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Medically documented findings of at least one of the following:

1. Excessive anxiety manifested when the child is separated, or separation is threatened, from a parent or parent surrogate; or
2. Excessive and persistent avoidance of strangers; or
3. Persistent unrealistic or excessive anxiety and worry (apprehensive expectation), accompanied by motor tension, autonomic hyperactivity, or vigilance and scanning; or
4. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
5. Recurrent severe panic attacks, manifested by a sudden unpredictable onset of intense apprehension, fear, or terror, often with a sense of impending doom, occurring on the average of at least once a week; or
6. Recurrent obsessions or compulsions which are a source of marked distress; or
7. Recurrent and intrusive recollections of a traumatic experience, including dreams, which are a source of marked distress;

AND

B. . . . for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.06.

As noted above, paragraph B of Listing 112.06 requires that Plaintiff have at least two of the appropriate age-group criteria in paragraph B2 of 112.02, which are:

a.    Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

b.    Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c.    Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 112.02(B)(2); 112.06(B).

Here, the ALJ considered Listing 112.06 and found that Plaintiff's "significant anxiety" resulted in a marked limitation in interacting and relating with others (Tr. 14, 23-25). The ALJ noted that while Plaintiff exhibited anxiety, he did not meet both prongs of the listing, i.e., he did not have medically documented findings of at least one of requirements of paragraph A of Listing 112.06, and at least two of the appropriate age-group criteria in paragraph B2 of Listing 112.02 (as required by paragraph B of Listing 112.06) (Tr. 15). The ALJ acknowledged that Plaintiff's anxiety interfered with his ability to interact with people, but found that it was not severe enough to meet the requirements of Listing 112.06. (Tr. 15).

Plaintiff argues that the evidence satisfied the criteria of either Listing 112.06(A)(1), (A)(3), or (A)(4). (Doc. 8 at 9-11). Plaintiff notes that the record indicates

difficulty separating from a parent. In January 2015, while evaluated at Children's Hospital, the examiner noted that CW "transitioned reluctantly from the waiting area to the testing room;" he cried upon entering the testing room and was unable to separate from his mother to participate in the administration of the ADOS-2" (Tr. 695). Likewise, during a psychological evaluation in February 2015, the examiner noted that CW's mother remained in the room during testing due to CW's concerns related to separating (Tr. 729).

Plaintiff further asserts that CW satisfies section (A)(3) and/or (A)(4) of Listing 112.06. CW's pediatrician noted that CW seems to obsess more about things that cause him to worry. (Tr. 614). During an exam in October 2014, CW was noted to not like dogs barking, fire alarms, worry excessively and had major concerns with fixation as reported by his teacher. (Tr. 687-688). He reportedly wore noise reducing ear muffs at school due to fear of the fire alarm going off. (Tr. 687; 728). During an evaluation in January 2015, CW needed a checklist to transition between activities and often asked questions about what would happen next and mentioned his fear of fire drills. *Id.* In a February 2015 evaluation, CW was visibly agitated and sought reassurance from his mother and the examiner about a variety of topics. (Tr. 729).

The Commissioner, however, contends that the ALJ's finding that Plaintiff did not meet the requirements for paragraph A is substantially supported. The Commissioner contends that while evidence may demonstrate some difficulty transitioning or some concerns with separation, but is insufficient to establish the "excessive anxiety" manifested with separation or threatened separation required by the listing. No other separation anxiety was noted, and Plaintiff successfully attended school daily. With regard to paragraph (A)(3), Plaintiff cites to examples that demonstrate typical

symptoms of anxiety, such as worrying and needing reassurance. But though worry was noted, it was not assessed by any medical professional to be unrealistic, nor were the required physical traits (motor tension, autonomic hyperactivity, vigilance and scanning) noted to be present on a persistent or reoccurring basis. Similarly, with respect to paragraph (A)(4), Plaintiff argues that his dislike of shots and loud noises was sufficient to meet the requirements of the Listing. (*See* Pl.'s Br. at 10-11). However, the subsection requires that the fear be both persistent and irrational; while Plaintiff was noted to have anxiety in these situations, no medical professional ever characterized such worry as irrational, and despite his anxiety about the shots and loud noises, Plaintiff was able to stay in the doctor's office and in the school setting with accommodations.

In any event, even assuming that Plaintiff could establish that his anxiety met the criteria of paragraph A, Plaintiff has not meet the requirements of the paragraph B criteria, i.e. at least two marked impairments in the following categories: cognitive/communicative functioning, social functioning and personal functioning. As noted above, the law requires that the criteria of both paragraphs be met. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); see also *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("In order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing. It is insufficient that a claimant comes close to meeting the requirements of a listed impairment.") (citations omitted).

With regard to the paragraph B criteria, Plaintiff argues the evidence supports findings of "marked" level of impairment in cognitive/communicative function and social functioning. *Id.* at 11-12. Plaintiff's contentions are unavailing.

The regulations provide that cognitive function can be measured by standardized tests of intelligence. Thus, a "a primary criterion for limited cognitive function is a valid verbal, performance, or full scale IQ of 70 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.00(C)(2)(a). With respect to cognitive/communicative functioning, the ALJ noted that Plaintiff's intelligence tests measured in the borderline to low average range, ranging from 77 – 88. (Tr. 208-09, 689, 730, 733). Additionally, Plaintiff's interim report in October 2014, showed that he was not failing language arts and his other grades were 80 or higher. (Tr. 19, 631). Plaintiff's impairments also did not interfere with his opportunity to participate in school or community extracurricular activities, such as boy scouts or sports. (Tr. 18, 218). In light of the foregoing, the undersigned finds that the ALJ properly concluded that Plaintiff did not have a marked impairment in cognitive functioning. (Tr. 14-15).

The ALJ did find that Plaintiff's "significant anxiety" resulted in a marked limitation in interacting and relating with others. (Tr. 14, 23-25). However, the Listing requires that Plaintiff establish two areas of marked limitation. Plaintiff has the burden of showing that his impairments meet or equal a listed impairment. See 20 C.F.R. § 416.920(a)(4)(iii); *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001) ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder."). Plaintiff has failed to do so here.

Accordingly, the ALJ reasonably found that the medical evidence did not support a finding that Plaintiff met or medically equaled the requirements of Listing 112.06 for anxiety. (Tr. 14-15).

*2. Functional Equivalence Domains*

Plaintiff argues that the ALJ erred in determining that CW did not equal a Listing based upon his functional limitations. To determine functional equivalence, the Commissioner is required to assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §416.926a(b)(1). To prove that CW has an impairment that is functionally equivalent to a Listing, Plaintiff must show that CW's impairments resulted in "marked" limitations in at least two of the six domains.[1]  20 C.F.R. §416.926a(d).

Here, the ALJ found that CW functionally experiences a "marked" limitation in one of the six domains, interacting and relating with others.  Plaintiff challenges the ALJ's determination only with respect to two domains:  acquiring and using information, and attending and completing tasks.  Plaintiff claims that CW's limitations were "marked" in both areas.  Significantly, Plaintiff does not challenge the ALJ's determination that CW's limitations were "less than marked" in the domains of in moving about and manipulating objects, caring for himself, and in the domain of health and physical well-being.

Because "marked" limitations are required in *at least* two domains in order to obtain benefits, ordinarily the undersigned would recommend affirmance of the non-disability decision if substantial evidence supports the ALJ's determination that CW has "less than marked" limitations in *either* of the two challenged domains.  However,

---

[1]Alternatively, a claimant may prove functional equivalence by showing "extreme" limitation in one domain, but Plaintiff does not specifically argue that C.W. had any "extreme" limitations.

Plaintiff alternatively seeks to remand based upon a more general argument that the ALJ's entire analysis was fundamentally flawed due to over-emphasis on CW's ADHD, rather than focusing on the combination of his anxiety and ADHD symptoms. None of the asserted errors warrant remand; therefore, the undersigned recommends affirming the Commissioner's decision.

Plaintiff's primary arguments are that CW had "marked" limitations in two domains. "Marked limitation" in a particular domain exists when the child's impairment "interferes seriously" with the ability to independently initiate, sustain, or complete activities, regardless of whether the impairment limits only one activity in the domain, or several activities. The interactive and cumulative effects of a child's impairments must be considered; both relevant regulations and several social security rulings also require the Commissioner to consider the "whole child" in making findings regarding functional equivalence. 20 C.F.R. §415.926a(b) and (c); *see also generally* SSR 09-1p. Relevant to Plaintiff's challenge to the two referenced domains in this case, a "marked" limitation is defined as a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. §416.926a(e)(2).

*A. Acquiring & Using Information*

The domain of acquiring and using information concerns a child's ability to acquire or learn information, and to use the information he has learned. In reviewing the referenced domain, the ALJ discussed all relevant standards to evaluate "how well a child is able to acquire or learn information, and how well a child uses the information he has learned." (Tr. 21-22). As the ALJ noted, the domain involves how well children perceive, think about, remember, and use information in all settings, including their daily activities at home, at school, and in the community. *See* 20 C.F.R. §416. 926a(g) and

SSR 09-3p.  The ALJ appropriately reviewed what an adolescent child should be able to demonstrate in the domain of acquiring and using information, since CW was an adolescent child both at the time when the application was filed on his behalf and at the date of the evidentiary hearing.  The ALJ also reviewed Social Security regulation 20 C.F.R. §416.926a(g)(3) and SSR 09-3p, which provide examples of the types of limited functioning in the referenced domain that a child may have over a range of ages and developmental periods.  (Tr. 21).

In terms of evaluating whether a child has "marked" impairment, the regulations provide that a child without any impairment should be able to "demonstrate what he has learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments)" and should "be able to use what he has learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation)."  *See* 20 C.F.R. §416.925a(g).  An "adolescent" child with no impairment should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas)," and  should "learn to apply these skills in practical ways that will help him enter the workplace after finishing school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer)."  *Id.*

In contrast to those with no limitations, children with limitations do not understand "words about space, size, or time (e.g., in/under, big/little, morning/night); (ii) cannot rhyme words or the sounds in words; (iii) [have] difficulty recalling important things learned in school yesterday; (iv) [do] not use language appropriate for age; (v) [are] not developing 'readiness skills' the same as peers (e.g. learning to count, reciting ABC's,

scribbling); (vi) [have] difficulty comprehending written or oral directions; (vii) [struggle] with following simple instructions; (viii) [have] difficulty solving mathematics questions" or "(ix) [talk] only in short, simple sentences, and [have] difficulty explaining what [they] mean[]." 20 C.F.R. §416.925a(g)(2)(iv) and SSR 09-3p. However, the regulations "recognize that limitations of any of the activities in the examples do not necessarily mean that a child has a 'marked' or 'extreme' limitation." 20 C.F.R. § 416.926a.

In finding that CW has some limitation in acquiring and using information but evaluating the degree of that limitation as "moderate" and therefore "less than marked," the ALJ provided the following analysis:

> Claimant has less than marked limitation in acquiring and using information. The claimant has a history of ADHD and anxiety, but is doing well on Zoloft. His medications have been reasonably effective in controlling the claimant's ADHD to the extent that he has been able to make adequate academic progress in school. Though he is just passing language arts, his grades have improved in 2014-2015, and he is in regular classes at school. The claimant's mother testified that he may get a math tutor as well. A less than marked level of limitation in acquiring and using information suggested by the DDS reviewing psychologist and physicians of record is appropriate.

(Tr. 22) (internal citations omitted).

Plaintiff argues that none of the reasons cited by the ALJ are valid, and that there are findings contrary to those findings by the ALJ. Plaintiff further argues that reports from teachers (Tr. 236, 269) and the cognitive testing (Tr. 730) performed in February 2015 indicate a marked level of impairment. (Doc 13 at 3). I disagree, and conclude that the ALJ's analysis is supported by substantial evidence.

Plaintiff first asserts that the ALJ improperly determined that CW's limitations could not be markedly limited in acquiring and using information because two teachers as well as a cognitive evaluation proves the contrary. (Doc 8 at 14). Plaintiff provides that questionnaires completed by Ms. Moss in June 2013 and Ms. Senger in November

13

2014 stated that CW had a "serious" and "very serious" problem comprehending and understanding material in school.   (Doc. 8 at 14). Plaintiff further contends these opinions are supported by CW's scores on Map Testing for the 2013-2014 school year, where he scored a 9% for math and a 6% for English. (Tr. 634). In addition, Plaintiff contends CW received special education for all academic areas and school records indicated CW had problems following even one step instructions. (Tr. 79, 211). Moreover, Plaintiff argues that a cognitive evaluation at Children's Hospital in February 2015 showed CW in the borderline range for knowledge, quantitative reasoning and working memory. (Tr. 730). Additionally, CW's difficulty with receptive language would clearly result in different understanding instructions from the teacher. (Doc. 8 at 15).

As noted by the Commissioner, the ALJ stated that she noted Plaintiff had a history of ADHD, but was doing well on Zoloft. (Tr. 16, 19, 22-23, 611-616, 628). Plaintiff testified at the administrative hearing, his medication was helping. (Tr. 16, 56-57).  The ALJ expressly noted that CW's was making adequate progress in school. (Tr. 19, 22, 264, 631). Notably, the ALJ referred to scores that revealed Plaintiff mathematics, science, and social studies scores ranged from satisfactory to outstanding. *Id.* Additionally, it was found that Plaintiff was completing a curriculum that was not significantly different from the curriculum of other children. (Tr. 647). The amount of specialized instruction Plaintiff was receiving through his Individualized Education Plan ranged from 30-60 minutes each day; the remainder of the school day was spent in the general education setting. (Tr. 647-648).

Moreover, the ALJ's decision with respect to this domain, also considered the opinions of Plaintiff's teachers but gave them only some weight. (Tr. 20, 235-245, 268-275, 492-493). Contrary to Plaintiff's argument that the ALJ gave no weight in the

teacher's reports, the ALJ complied with agency regulations in considering the teachers' opinions. (Tr. 20). Furthermore, as lay opinions, the teachers' opinions were not entitled to any particular weight and were subject to the same credibility rules applicable to Plaintiff's own testimony. *See* 20 C.F.R. § 416.929(c)(3); Social Security Ruling (SSR) 96-7p. The ALJ found Plaintiff's allegations to be inconsistent with the objective medical evidence, Plaintiff's improvement with medication, his activities of daily living and his poor compliance with therapy. (Tr. 17-20). Additionally, the ALJ reasonably found the opinions of his teachers to be inconsistent with this evidence. The ALJ also discussed this finding of less than marked limitation in acquiring and using information was supported by both the State agency physicians and the physicians of record. (Tr. 22, 99-100, 112). Notably, the ALJ gave weight to the findings of the state agency psychological consultant, speech language pathologists Lisa Lynch and Melissa Hall, and a pediatrician. Upon review of the evidence of record, these professionals concluded that Plaintiff exhibited less than marked limitation in acquiring and using information and attending and completing tasks. (Tr. 99-100). The ALJ considered the opinions of the State agency physicians and explained in her decision the weight given to the opinions. As non-examining physicians, their opinions could be given weight "only insofar as they are supported by evidence in the case record." *See* SSR 96-6p; *see also* 20 C.F.R. § 416.927(e)(i). The ALJ found that such findings should not to be relied on due to the fact State agency physicians did not have the benefit of reviewing the most recent records. (*See* Pl.'s Br. at 15).

In sum, many children with "less than marked" limitations may perform poorly in school and/or require significant additional resources for a variety of reasons that do not equate to a "disability." Plaintiff demonstrates no reversible error.

For the reasons discussed, substantial evidence exists to support the ALJ's determination that CW's impairment was "less than marked" in acquiring and using information. It bears repeating that:

> The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d at 1035. That the evidence could be interpreted to support *either* a "marked" or a "less than marked" finding in a particular domain does not mean that it must be interpreted in Plaintiff's favor. The Commissioner's decision must be affirmed so long as "such relevant evidence [exists] as a reasonable mind might accept as adequate to support" it. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284 286 (6th Cir. 1994).

### B. Attending & Completing Tasks

The domain of attending and completing tasks concerns a child's ability to focus and maintain attention, and how well he is able to do activities. In reviewing the referenced domain, the ALJ discussed all relevant standards to evaluate "how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including mental pace at which he performs activities and the ease of changing activities." (Tr. 22). As the ALJ noted, the domain also refers to a child's ability to avoid impulsive thinking and his ability to prioritize competing tasks and manage his time. *See* 20 C.F.R. §416.926a(h) and SSR 09-4p. The ALJ appropriately reviewed what an adolescent child should be able to demonstrate in the domain of attending and completing tasks, since CW was an adolescent child both at the time when the application was filed on his behalf and at the date of the evidentiary hearing. The ALJ also reviewed Social Security regulation 20 C.F.R. §416.926a(h)(3) and SSR

09-4p, which provide examples of the types of limited functioning in the referenced domain that a child may have over a range of ages and developmental periods. (Tr. 22-23).

In terms of evaluating whether a child has "marked" impairment, the regulations provide that an adolescent child without any impairment should be able to "focus his attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignment." (Tr. 22). "The child should be able to concentrate on details and not make careless mistakes in his work (beyond what would be expected in other children of the same age who do not have impairments)." *See* 20 C.F.R. §416.926a(h). An "adolescent" child with no impairment "should be able to change activities or routines without distraction, and stay on task and in place when appropriate." *Id.* Additionally, "the child should be able to sustain attention well" and "complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms)." *Id.*

In contrast to those with no limitations, children with limitations (i) [are] easily startled, distracted, or over-reactive to everyday sounds, sights, movements, or touch; (ii) [are] slow to focus on, or fail[ ] to complete, activities of interest (e.g., games or art projects) ; (iii) repeatedly become[ ] side-tracked from activities or frequently interrupt[ ] others; (iv) [are] easily frustrated  and give[ ] up on tasks, including ones [   ] capable of [being] completed; (v) requires extra supervision to remain engaged in an activity; or (vi) cannot plan, mange time, or organize self in order to complete assignments or chores. 20 C.F.R. §416.926a(h)(3) and SSR 09-4p. However, the regulations "recognize that limitations of any of the activities in the examples do not necessarily mean that a child has a 'marked' or 'extreme' limitation."  20 C.F.R. § 416.926a.

Plaintiff argues that none of the reasons cited by the ALJ are valid, and that there are findings contrary to those findings by the ALJ. Plaintiff further argues that reports from teachers (Tr. 236, 269), notes from pediatrician (Tr. 613) and numerous evaluations (Tr. 695) indicate a marked level of impairment. (Doc 8 at 15-16). I disagree, and conclude that the ALJ's analysis is supported by substantial evidence.

Plaintiff first asserts that the ALJ improperly determined that that CW's limitations could not be markedly limited in attending and completing tasks because questionnaires from two of Plaintiff's teachers prove the contrary. (Doc 8 at 15). These questionnaires are the same questionnaires used by Plaintiff to attempt to prove a marked impairment in regards to CW in acquiring and using information. The questionnaires were completed by Ms. Moss in June 2013 and Ms. Senger in November 2014. Ms. Moss stated that CW had an "obvious" problem with refocusing to task; completing class/homework assignments; completing work accurately without careless mistakes; working without distracting self or others and working at a reasonable pace/finishing on time. (Tr. 237). Ms. Senger stated that CW had a "very serious" problem with paying attention; focusing long enough to finish assigned activity; refocusing; carrying out multi-step instruction; organizing own things or school materials, among other things. (Tr. 270). Plaintiff further contends these opinions are supported by CW's IEP from March 2013 which indicated he had difficulty following one-step instructions. (Tr. 211). In addition, Plaintiff contends CW's numerous evaluation reports and observations by pediatrician demonstrate his marked limitation in attending and completing tasks. (Tr. 622, 613, 688, 695, 733). Plaintiff suggests that the ALJ erred in finding that Plaintiff did not functionally equal the severity of this listed impairment, specifically the ALJ failed to

give a basis for rejecting the opinions of CW's educators, who found at least a "marked" level of restriction in CW's ability to attend to and complete tasks. (Doc. 8 at 16).

The ALJ used a similar line of reasoning that was applied in finding that Plaintiff had less than a marked limitation in acquiring and using information. In finding that CW has some limitation in attending and completing tasks but evaluating the degree of that limitation as "moderate" and therefore "less than marked," the ALJ's decision states in relevant part:

> The claimant does have ADHD and anxiety; however he is doing well on Zoloft. His mother and doctor noted problems focusing, but records show that his grades at school were improving and his doctor noted that when he is medicated he had no impulsivity or emotional lability. Additionally, the claimant maintains the focus to play blocks at home, play on a computer and play video games, which justify a less than marked limitation in attending and completing tasks.

(Tr. 23).

The record indicates that Plaintiff was making progress in school. (Tr. 19, 22, 264, 631). Plaintiff's scores in mathematics, science, and social studies ranged from satisfactory to outstanding. *Id.* During the 2013-2014 school year, Plaintiff only received 30 minutes of specialized instruction in language arts each day. (Tr. 648). The next year, he received 60 minutes of specialized instruction in a small group setting in the areas of math and reading every day (300 minutes per week). (Tr. 647). He also received 200 minutes of speech therapy and 90 minutes of occupational therapy each month. (Tr. 647). The remainder of the school day was spent in the general education setting. (Tr. 647-648). Additionally, Plaintiff was to participate in statewide and districtwide testing, with accommodations. (Tr. 651). He was not found to be completing a curriculum that was significantly different than the curriculum of other children. (Tr.

651). His doctor also noted that Plaintiff was "in a typical classroom for the majority of his day." (Tr. 728, 750).

Moreover, as detailed above, the ALJ properly assigned little weight the findings of Plaintiff's educators because they were inconsistent with the record evidence.  The ALJ also properly afforded deference to the findings of the state agency physicians' and also properly considered the entire record, including the teacher reports and school records, medical records, psychological consultative examination, and administrative hearing testimony. (Tr. 15-27).  Accordingly, Plaintiff's assignment of error in this regard should be overruled.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SASHA ESTEP,
on behalf of minor child, C.W.,                    Case No. 1:16-cv-00925

      Plaintiff                                              Barrett, J.
                                                                        Bowman, M.J.
             v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit right on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).