# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Sasha Estep,

    Plaintiff,

    v.                                         Case No. 1:16cv925

Commissioner of Social Security                Judge Michael R. Barrett

    Defendant.

## **OPINION & ORDER**

This matter is before the Court upon the Magistrate Judge's August 16, 2017, Report and Recommendation ("R&R") recommending that the decision of the Commissioner be affirmed and this matter be closed on the docket of the Court. (Doc. 14).

When objections are received to a magistrate judge's report and recommendation on a dispositive matter, the district judge "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1). Notice was given to the parties under 28 U.S.C. § 636(b)(1)(c). Plaintiff filed objections to the Magistrate Judge's R&R. (Doc. 17). The Commissioner filed a Response to Plaintiff's objections. (Doc. 18).

The Magistrate Judge completed a comprehensive review of the record and the same will not be repeated here.

Plaintiff maintains that the Magistrate Judge's R&R was in error for the following reasons: (1) the ALJ erred at Step 3 by finding Plaintiff did not meet Listing 112.06, 20 C.F.R. Pt. 404, Subpt. P, App. 1; and (2) the ALJ erred in finding Plaintiff did not functionally equal the severity of one of the listed impairments. For the most part, Plaintiff's objections repeat the arguments made in his Statement of Specific Errors.

I. **ANALYSIS**

    A. **Listing 112.06**

In order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing. *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (citing 20 C.F.R. § 416.924(a); *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987)).

Plaintiff explains that he meets at least three of the requirements of paragraph A of Listing 112.06:

> (A) medically documented findings of at least one of the following:
>
> (1) excessive anxiety manifested when the child is separated, or separation is threatened, from a parent or parent surrogate; or
>
>  . . .
>
> (3) Persistent unrealistic or excessive anxiety or worry ..., accompanied by motor tension, autonomic hyperactivity, or vigilance and scanning; or
>
> (4) A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; . . .

The Magistrate Judge explained that the ALJ's finding that Plaintiff did not meet the requirements for paragraph A was substantially supported.

With regard to section (A)(1), Plaintiff argues the term "excessive anxiety" is not

defined in the Listing, but logic dictates that "excessive" refers to the level of anxiety rather than the frequency of anxiety. However, as the Magistrate Judge explained, the record only contained one instance of anxiety manifested when CW was separated from his mother for testing. The Magistrate Judge also noted that CW attended school daily. Even if this Court were to adopt Plaintiff's argument that "excessive" refers to the level of anxiety, versus the frequency of anxiety, Plaintiff does not point to support in the record for a finding that CW's level of anxiety was excessive when the he was separated, or separation is threatened, from a parent.

With regard to section (A)(3), Plaintiff argues that the Listing does not require the presence of unrealistic anxiety and worry, it merely states the child must either demonstrate "persistent unrealistic or excessive anxiety and worry." The Magistrate Judge acknowledged that there were instances where CW exhibited anxiety and worry, but explained that the required physical traits such as motor tension, autonomic hyperactivity, vigilance and scanning, were not noted on a persistence or reoccurring basis.

With regard to section (A)(4) of the listing, Plaintiff argues that the listing does not define the term irrational and does not require that a physician refer to the worry as irrational. However, as the Magistrate Judge noted, the record shows that CW was able to stay in the doctor's office for shots and attend school.

Moreover, the Magistrate Judge concluded that even if Plaintiff could establish that his anxiety met the criteria of paragraph A, Plaintiff has not met the requirements of the paragraph B criteria.

As the Magistrate Judge explained, the claimant's anxiety must result in at least

3

two of the age-specific findings listed in § 112.02(B)(2): marked impairment in cognitive/communicative function, marked impairment in social functioning, marked impairment in personal functioning, and marked difficulties in maintaining concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02(B)(2). The Magistrate Judge noted that the ALJ found Plaintiff had "marked" level of impairment in social functioning. Plaintiff argues that he also has a marked level of impairment in the area of cognitive/communicative function.

Plaintiff points out that while the Magistrate Judge found that Plaintiff's interim report in October 2014 showed he was not failing language arts, the report actually shows that he was failing language arts because a score of 68 is an "F." (Tr. 631). Plaintiff points out that the grade report for the second quarter in November 2014, showed worsening in his grades overall, with an even lower score of 58 in language arts. (Tr. 264). Plaintiff explains these scores were received while under the special education curriculum. (Tr. 633).

Plaintiff is correct that the scale on his report card explains that a "D" grade is 70-74 and means "in danger of failing," but below 70 is an "F." (Tr. 631). Therefore, Plaintiff was indeed failing language arts. However, as the Magistrate Judge also noted, Plaintiff's other grades in October of 2014 were above 80. (Tr. 631). On Plaintiff's report card from November of 2014, Plaintiff did have a score of 58 in language arts, but again, his grades in other subjects were passing. (Tr. 264). This failing grade was noted by the ALJ. (Tr. 19).

However, as the Magistrate Judge noted, the regulations provide that "[a] primary criterion for limited cognitive function is a valid verbal, performance, or full scale IQ of 70

4

or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C)(2)(a). Therefore, Plaintiff's intelligence tests—which ranged from 77 to 88—do not meet the primary criterion for limited cognitive function listed in 112.00(C)(2)(a).[1]

"Even if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010) (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)); *see also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts."). Therefore, the Magistrate Judge did not err in concluding that the ALJ reasonably found that the medical evidence did not support a finding that Plaintiff's anxiety met the requirements of Listing 112.06.

### B. Functional equivalence

To find that a child's impairments are the functional equivalent of a Listing, the regulations require that the impairment has resulted in "marked" limitations in two domains or an "extreme" limitation in one domain, of the six listed domains. 20 C.F.R. § 416.926a(a) & (b)(1).[2] Plaintiff explains that he has shown an impairment that is

---

[1] The Court notes that the examiner who gave the test which resulted in the score of 77 noted: "Due to significant scatter among [CW's] Nonverbal IQ (NVIQ), Verbal IQ (VIQ), and factor scores that comprise the Full Scale IQ (FSIQ), it is not an accurate description of (CW's) functioning. Rather, [CW's] NVIQ, VIQ, and individual factor scores provide a more accurate depiction of his functioning." These scores were 84, 72, and ranging between 71 and 97. (Tr. 730).

[2] In order to establish that an impairment or combination of impairments is of listing-level severity and therefore functionally equivalent to the listings, the claimant must show that his or her impairment or combination of impairments has resulted in an extreme limitation in one area of functioning or marked limitations in two areas. 20 C.F.R. § 416.926a(a). The regulations

5

functionally equivalent to a Listing because the Commissioner already found him "marked" in the domain of "interacting and relating with others" due to his anxiety, and there is evidence in the record that he has a "marked" limitation in the domains of "acquiring and using information," and "attending and completing tasks."

In finding that CW has "less than marked limitation in acquiring and using information, the ALJ stated:

> The claimant has a history of ADHD and anxiety, but is doing well on Zoloft (14P/ 19). His medications have been reasonably effective in controlling the claimant's ADHD to the extent that he has been able to make adequate academic progress in school. Though he is just passing language arts, his grades have improved in 2014-2015, and he is in regular classes at school (12E/2, 15P/2). The claimant's mother testified that he may get a math tutor as well. A less than marked level of limitation in acquiring and using information suggested by the DDS reviewing psychologist and physicians of record is appropriate (2A, 4A).

(Tr. 22). Plaintiff has cast doubt on whether the ALJ's conclusion is based upon substantial evidence.

First, Plaintiff disputes the ALJ's conclusion that he is "doing well" on Zoloft. Medical records show that in February of 2014, CW was weaned off Zoloft due to mood swings. (Tr. 621-22). Zoloft was resumed in July of 2014. (Tr. 615-16). In August of 2014, CW's pediatrician noted that his mother called to report that he was doing well on

---

identify six "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The six areas, referred to as "domains," are as follows:

    (1) Acquiring and using information;
    (2) Attending and completing tasks;
    (3) Interacting and relating with others;
    (4) Moving about and manipulating objects;
    (5) Caring for oneself; and
    (6) Health and physical well-being.

*Id.*

Zoloft. (Tr. 628). This is the record cited by the ALJ in her decision. (Tr. 19). However, other records show that one month later, in September of 2014, CW's mother called to report to the pediatrician that Zoloft is making CW sleepy during school. (Tr. 627). A month later, during a visit at Children's Hospital, records show that CW was no longer taking Zoloft and that Zoloft made him irritable. (Tr. 688). During the hearing on December 11, 2014, CW's mother testified that on November 26th CW was started on Celexa. (Tr. 65). Records from a visit to Children's Hospital after the hearing show that CW was taking Celexa. (Tr. 708). There is no indication that CW was taking Zoloft at that time. Additional records from Children's Hospital show that when CW was present to be evaluated on January 27, 2015 and February 23, 2015, he had previously taken Zoloft, but the medication made him irritable, and was currently taking Celexa. (Tr. 736, 752).

Next, Plaintiff disputes that he is making adequate academic progress. The ALJ discussed the two grade reports in the record:

> The claimant's interim report for third grade in November 2014 showed that he was failing language arts, but had a 100 in science (12E/2). The claimant's third grade teacher questionnaire noted that he had no independence with schoolwork and had very serious problems in acquiring and using information (14E/3). His teacher noted that he had high anxiety regarding loud noises, but noted no problems respecting adults, relating experiences, and taking care of personal hygiene (14E/5, 7).
>
> Subsequent evidence documents similar findings. The claimant's interim report for grades 3-4 showed that he was barely passing language arts, but his grade had improved to 68 (15F/2). Other grades were 80 or higher (15F/2).

(Tr. 19). The grade report identified by the ALJ as "subsequent evidence" was actually dated October of 2014 and shows grades for the first grading period. (Tr. 631). The

report in November of 2014 shows grades for the second grading period. (Tr. 264). Therefore, instead of showing that CW's grade had improved to 68, the reports show that the language arts grade fell to a 58. As explained above, both of these grades are considered failing.

Third, Plaintiff explains that he was not in regular classes in school, and instead, his IEP shows that he received instruction at his level, which was two to three grade levels behind his actual grade. The Court notes that CW's IEP for the 2014/15 school year shows that while CW was in the general education classroom, he was being pulled out of class daily to work with the intervention specialist on math and reading, meeting weekly with the speech language pathologist, and meeting twice a month with the occupational therapist. (Tr. 268, 647-648). The IEP also calls for a number of accommodations, including an accommodation in language arts of having the "opportunity to correct test/quizzes for a higher grade." (Tr. 648). While the Magistrate Judge discussed CW's IEP for 2014/15 (Doc. 14, PAGEID #854), the ALJ did not.

This aspect of the ALJ's analysis of the domain of "acquiring and using information" was inadequate. Social Security Ruling 09–3p sets forth agency policy on the evaluation of the domain of "acquiring and using information." It explains:

> Because much of a preschool or school-age child's learning takes place in a school setting, preschool and school records are often a significant source of information about limitations in the domain of "Acquiring and using information." Poor grades or inconsistent academic performance are among the more obvious indicators of a limitation in this domain provided they result from a medically determinable mental or physical impairment(s). Other indications in school records that a mental or physical impairment(s) may be interfering with a child's ability to acquire and use information include, but are not limited to:
>
> • Special education services, such as assignment of a personal aide who

helps the child with classroom activities in a regular classroom, remedial or compensatory teaching methods for academic subjects, or placement in a self-contained classroom.

• Related services to help the child benefit from special education, such as occupational, physical, or speech/language therapy, or psychological and counseling services.

• Other accommodations made for the child's impairment(s), both inside and outside the classroom, such as front-row seating in the classroom, more time to take tests, having tests read to the student, or after-school tutoring.

The kind, level, and frequency of special education, related services, or other accommodations a child receives can provide helpful information about the severity of the child's impairment(s).

SSR 09-3p, 2009 WL 396025. While there is no requirement that the ALJ discuss every piece of evidence in the administrative record, *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006), Social Security Ruling 09–3p indicates that the evidence of the "kind, level, and frequency of special education, related services, or other accommodations" that CW received warranted discussion by the ALJ.

Finally, Plaintiff explains that the ALJ relied on the state agency physicians who found a less than marked limitation, but points out that even the ALJ could not agree with the whole opinion as she found a "marked" limitation in interacting and relating with others, contrary to the state agency physicians who found no limitations. (Tr. 112).

Here, the ALJ stated: "Great weight is given to the State agency medical consultants' assessments because they are consistent with the residual functional capacity determined in this decision, except that the undersigned found the claimant to be marked in interacting and relating to others (2A, 4A)." (Tr. 20). While the Magistrate Judge discussed these opinions and suggested the why the entirety of the state agency

physicians' opinions were not adopted (Doc. 14, PAGEID #855), the ALJ's discussion of these opinions was limited to the language quoted above. The failure to provide any justification for the weight given to the opinions of the state agency physicians prohibits this Court from determining whether substantial evidence exists to support the finding of the ALJ. *See Lowery v. Comm'r of Soc. Sec.*, 55 Fed. Appx. 333, 339, WL 236419, 5 (6th Cir. 2003) (quoting *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995) (An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning")).

Moreover, the ALJ's reference to "the residual functional capacity determined in this decision" is puzzling. In children, the analytical focus is on functioning as opposed to the "Residual Functional Capacity" analysis undertaken for adult disability claims. *Woodhouse ex rel. Taylor v. Astrue*, 696 F. Supp. 2d 521, 527 (D. Md. 2010) (citing 20 C.F.R. § 416.929(d)(4)); *see also Hayes ex rel. B.M.H. v. Colvin*, No. 14-754, 2015 WL 1405456, at *3 (W.D. Pa. Mar. 26, 2015) (explaining that RFC assessments "have no bearing on this child SSI case involving a [child] who has never worked.").

Similarly, in finding that CW has less than marked limitation in attending and completing tasks, the ALJ explained:

> The claimant does have ADHD and anxiety; however, he is doing well on Zoloft (14F/19). His mother and doctor noted problems focusing, but records show that his grades at school were improving, and his doctor noted that when he was medicated he had no impulsivity or emotional lability (12F/2- 3, 15F/2). Additionally, the claimant maintains the focus to play blocks at home, play on a computer and play video games, which

justify a less than marked limitation in attending and completing tasks.[3]

(Tr. 23). As discussed above, there is not substantial evidence in the record to support the ALJ's statement that Plaintiff is doing well on Zoloft or that his grades at school were improving. In addition, Social Security Ruling 09-4P indicates that reliance on the ability to focus on playing video games may be misplaced:

> Some children with impairments can attend to some tasks, but not to all tasks in all settings. Such children may exhibit "hyperfocus," an intense focus on things that interest them, such as video games, but be limited in their ability to focus on other tasks. These kinds of limitations in the domain of "Attending and completing tasks" are common in children with AD/HD and autistic spectrum disorders (ASD). For example, some children with ASD may be distracted by, or become fixated on, everyday sounds (such as the hum of an air conditioner) that children without impairments can easily ignore. Children with autism may become fixated on parts of an object (such as the wheels on a toy truck) rather than on the more obvious and primary use of the object. Children with Asperger's disorder (one type of ASD), may hyperfocus on a single area of interest and have difficulty discussing or paying attention to any other subject. These children may appear to function well, or even better than other children, in the area of hyperfocus, but may be very limited in some other tasks and settings.

SSR 09-4P, 2009 WL 396033. For this reason, in addition to the reasons discussed above, the Court finds that the Court cannot determine whether substantial evidence exists to support the findings of the ALJ.

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of

---

[3] As a minor point of clarification, at the hearing, CW testified that when he came home from school, he liked to play "Roblox," which is an online video game. (Tr. 52). CW did not testify that he liked to play with "blocks," and corrected the ALJ when questioned if he was saying "blocks."

11

law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court concludes that a remand for rehearing is warranted in this case.

## II. CONCLUSION

Based on the foregoing, the Court hereby **DECLINES to ADOPT** the Magistrate Judge's August 16, 2017 R&R. (Doc. 14). This matter shall be **REMANDED** under Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

                                           */s/ Michael R. Barrett*
                                           Michael R. Barrett, Judge
                                           United States District Court